The CITY OF LAKEWOOD, a Colorado Municipal Corporation; Walter C. Kane, City Manager, in his Official Capacity and Individually; James M. Zelenski, Assistant City Manager, in his Official Capacity and Individually; and Linda Shaw, Gordon Garrett, Norma Beard, David Larkin, Linda Morton, Tom Leadabrand, Harold Scatterday, Dennis Mateski, and Kathy Stapleton, in their Official Capacities as Members of the City Council, City of Lakewood, Colorado, Petitioners,

v.

Richard W. BRACE, Respondent.

No. 95SC196.

Supreme Court of Colorado,
En Banc.

June 24, 1996.

Rehearing Denied July 29, 1996.

Watson, Nathan & Bremer, P.C., Christina M. Habas, Bernard Woessner, Denver, for Petitioners.

David M. Herrera, Vance O. Knapp, Fort Collins, for Respondent.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Gregg E. Kay, First Assistant Attorney General, Beverly Fulton, Assistant Attorney General, Civil Litigation Section, Tort Litigation, Denver, for Amicus Curiae, State of Colorado.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in *Brace v. City of Lakewood, et al.*, 899 P.2d 301 (Colo.App. 1995), in which the court of appeals dismissed the petitioners' appeal of a partial summary judgment order because that order was not a final, appealable judgment. The petitioners before the court are: the City of Lakewood (Lakewood); Walter C. Kane and James M. Zelenski (individual defendants); and Linda Shaw, Gordon Garrett, Norma Beard, David Larkin, Linda Morton, Tom Leadabrand, Harold Scatterday, Dennis Mateski, and Kathy Stapleton, members of the City Council of Lakewood. The respondent is Richard W. Brace (Brace), a former employee of Lakewood. In brief, Brace instituted this action against the petitioners for his suspension and ultimate termination from Lakewood employment. Brace's complaint raised both state law claims (tort and contract) and federal claims under 42 U.S.C. section 1983 (1994) (section 1983 or federal claims). The petitioners answered, asserting immunity under the Colorado Governmental Immunity Act (CGIA), sections 24–10–101 to –120, 10A C.R.S. (1988 & 1995 Supp.).

The petitioners moved for summary judgment. The motion was denied in part and granted in part by the trial court. Subsequently, the petitioners sought our review of the court of appeals' decision dismissing their appeal of the trial court's order. Four grounds are before us on certiorari review: (1) whether the court of appeals erred in dismissing their appeal of the order denying summary judgment on the qualified immunity defense to Brace's federal claims; (2) if so, whether they are entitled to judgment as a matter of law on that defense; (3) whether the court of appeals erred in dismissing their appeal from the order denying summary judgment on the sovereign immunity defense to Brace's state law claims; and (4) if so, whether the trial court erred in denying summary judgment on the sovereign immunity defense based on the existence of material issues of fact.[1] We reverse the judgment of the court of appeals and return the case to that court with instructions to remand to the trial court for reconsideration of the summary judgment motion in light of our decision.

## I.

Brace was employed by Lakewood in various capacities from August 1983 until he was suspended and ultimately terminated in November 1991. Sometime in April or May 1984, Brace was promoted to the position of Acting Housing Manager of Lakewood.[2] Commencing September 1, 1984, Brace was appointed Executive Director and Secretary to the Board of Commissioners of the Lakewood Housing Authority (LHA).[3] During the relevant time period, Walter C. Kane (Kane) held the position of City Manager of Lakewood and James S. Zelenski (Zelenski) held the position of Assistant City Manager

---

1. We granted certiorari on the following four issues:

    (1) Did the court of appeals err in dismissing petitioners' appeal from the district court order denying summary judgment on petitioners' defense of qualified immunity to respondents's federal claims?

    (2) If so, are the petitioners entitled to judgment as a matter of law on the defense of qualified immunity?

    (3) Did the court of appeals err in dismissing petitioners' appeal from the district court order denying summary judgment on petitioners' sovereign immunity defense to respondent's state law claims?

    (4) If so, did the district court err in denying summary judgment on petitioners' sovereign immunity defense based on the existence of issues of material fact?

2. The Lakewood Housing Division manages federal Community Development Block funds. It operates under the direction of Lakewood City Management.

3. LHA is a quasi-municipal corporation created under Title 29 of the Colorado Revised Statutes. Among its other responsibilities, LHA manages funds received from the federal government for public housing.

of Lakewood. Both Kane and Zelenski are individual defendants. On April 21, 1991, Kane directed Brace to transfer $3,011,300 from the City of Lakewood's Private Activity Bond Allocation to the Arapahoe County Single Family Mortgage Revenue bond issue for 1991. At the time, Kane was also serving as the Senior Vice President of Hanifen, Imhoff, Inc., which had been designated as the investment bank for the Arapahoe County Single Family Mortgage Revenue bond issuance. Kane was also the Account Executive in charge of that issuance. Brace perceived Kane's position with Hanifen, Imhoff, Inc. and his affiliation with the bond issuance on behalf of Lakewood to be a conflict of interest. Thus, along with his direct supervisor, David Clark, Brace raised this as a concern to the Lakewood City Attorney's office.

On October 14, 1991, Zelenski suspended Brace from his position as Housing Manager of Lakewood for two days for purportedly violating Lakewood policies and ordinances. Brace did not appeal this suspension. On November 13, 1991, Brace's employment as Housing Manager came to an end.[4] Shortly thereafter, Brace was placed on a sixty-day suspension from his position as Executive Director and Secretary to the Board of Commissioners with the LHA. On January 13, 1992, LHA terminated his status as Executive Director and Secretary by passing a resolution that rescinded the resolution passed in 1984 which had originally named him to that position.

During Brace's employment, Lakewood had official policies and procedures which governed personnel decisions such as hiring, firing, and promotion of Lakewood employees. Specific procedures were in place regarding suspension and termination of Lake-

wood employees. On September 9, 1991, Lakewood passed an ordinance, Ordinance 0–91–45, amending a previous ordinance which had granted certain Lakewood management personnel the right to appeal their removal or suspension (which could only be for cause) to the City Manager.[5] The new ordinance no longer required that suspension or termination be for cause only and removed the right to appeal such actions.[6] In sum, covered individuals who occupied managerial positions, like Brace, became "at will" employees under the new ordinance. Ordinance 0–91–45 took effect on October 12, 1991, one day prior to Brace's two-day suspension and shortly before his termination from the Lakewood Housing Division.

Brace initiated this action in September 1992. Brace's action centered on his suspension and termination and the inception of Ordinance 0–91–45. In his complaint, Brace alleged that his suspension and subsequent termination were related to his whistleblower status with respect to Kane. Brace also characterized Ordinance 0–91–45 as depriving him of the "right to termination of his employment only upon cause" because "the ordinance purported to terminate appeal rights which were vested property interests prior to the passage of the [ordinance]." Brace stated thirteen claims for relief in his complaint including both federal and state claims. Four of the claims were denominated as contract claims (breach of contract for suspension and termination, and promissory estoppel for suspension and termination), three as torts (wrongful discharge, tortious interference with contract, and intentional infliction of emotional distress), and the remaining six were brought under 42 U.S.C. section 1983,

---

**4.** Although Brace characterizes his departure as a termination, the petitioners contend that Brace resigned from Lakewood employment. *See* discussion *infra* p. 236 n. 7. For convenience, we will refer to it as a termination.

**5.** Prior to the inception of Ordinance 0–91–45, the following ordinance was in effect:

Removal or suspension of management personnel who occupy positions designated in Section 2.27.020 and who are subject to the direct supervision of the department director may be removed or suspended for cause by

such department director. Management personnel may appeal the action of the department director to the City Manager.

**6.** Ordinance No. 0–91–45 provides in relevant part as follows:

2.227.040 REMOVAL OR SUSPENSION OF MANAGEMENT PERSONNEL. (a) Management personnel who occupy a position designated in Section 2.27.020(a) and (b) and who are subject to the direct supervision of the City Manager may be removed or suspended by the City Manager or Assistant Manager.

and raised assorted constitutional claims. *See* discussion *infra* p. 242.

The petitioners moved for summary judgment pursuant to C.R.C.P. 56. Their summary judgment motion was premised on the following four grounds: (1) there were no genuine issues of material fact;[7] (2) the CGIA barred Brace from suing Lakewood on claims sounding in tort; (3) the individual defendants were entitled to qualified immunity; and (4) the Colorado Workers' Compensation Act barred Brace's claim of intentional infliction of emotional distress (not relevant herein).

On November 4, 1993, the trial court ruled that there were genuine issues of material fact on Brace's contract claims (claims numbered one to four), and on the section 1983 claims (claims numbered eight to thirteen), therefore, summary judgment was not appropriate on those claims. However, the trial court granted summary judgment with respect to Brace's claims for wrongful discharge, tortious interference with contract, and intentional infliction of emotional distress as against Lakewood only. The trial court found that these three claims were barred by the CGIA because they were tort claims and thus precluded under section 24–10–108, 10A C.R.S. (1995 Supp.), as claims for which sovereign immunity was not waived under the CGIA. The trial court denied summary judgment on the tort claims of wrongful discharge and tortious interference with contract as against the individual defendants. The trial court found that there were genuine issues of material fact whether they acted in a manner that was "willful and wanton" under section 24–10–118(2)(a), 10A C.R.S. (1995 Supp.). The trial court, however, did dismiss Brace's tort claim of intentional infliction of emotional distress against all the defendants because recovery for that claim was barred by the Colorado Workers' Compensation Act. The parties did not request certification of the partial summary judgment motion under C.R.C.P. 54(b).[8]

The trial court's order is very short. In relevant part, the order provides as follows:

The Court finds that genuine issues of material fact exist with respect to Plaintiff's Claims for Relief numbers one through four and eight through thirteen. Therefore, summary judgment is not ap-

---

7. The petitioners' brief in support of summary judgment predominantly addressed their contention that Brace resigned from employment as Lakewood's Housing Manager and was not terminated from that position. Thus, the petitioners argued that Brace had failed to state a claim for violation of property rights and liberty interests. In his brief in response, Brace asserted that his resignation was demanded and, since it was not voluntary, it was tantamount to a constructive discharge. Brace explained that he was offered severance pay if he resigned which he would not have been eligible to receive if he was terminated. Brace also alleged that he was given only thirty minutes to decide whether or not to resign.

8. C.R.C.P. 54(b) provides as follows:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, *the court may direct the entry of a final judgment* as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims, or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis supplied.)

C.R.C.P. 54(b) "creates an exception to the general requirement that an entire case be resolved by a final judgment before an appeal is brought." *Lytle v. Kite,* 728 P.2d 305, 308 (Colo. 1986). Brace argues that without a C.R.C.P. 54(b) certification, the court of appeals lacked jurisdiction to entertain the petitioners' appeal. We disagree. That rule provides the trial court with discretionary power to certify an order for appeal. *Id.* (discussing the three-pronged analysis pursuant to which a trial court determines whether or not to certify under C.R.C.P. 54(b) and noting that the third prong is discretionary). Since our disposition of the first and third certiorari issues mandates that certain summary judgment orders are immediately appealable as a matter of law, the trial court lacked discretion to decide whether or not an immediate appeal was warranted. Hence, there was no reason to put the parties through the additional procedural hoop of seeking such certification which the trial court would have no power to deny.

propriate with respect to those claims. Colo. R. Civ. P. 56(c).

The Court finds that the Governmental Immunity Act applies in this case. Colo. Rev.Stat. § 24–10–106(1) (1988 & Supp. 1993) provides, "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort." Therefore summary judgment is appropriately entered in favor of the City of Lakewood on Plaintiff's Fifth Claim for Relief for wrongful discharge, on the Sixth Claim for Relief for tortious interference with a contract, and on the Seventh Claim for Relief for intentional infliction of emotional distress.

Colo.Rev.Stat. § 24–10–118(2)(a) states,

> [a] public employee shall be immune from liability in any claim for injury … which lies in tort or could lie in tort … and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton.

At this time the Court is not convinced that no genuine issues of fact exist with respect to whether the conduct of the individual Defendants was willful and wanton. Therefore, the Court cannot determine whether the qualified immunity of the individual Defendants prevents Plaintiff's action against them and summary judgment is not appropriate on the grounds of Defendants' qualified immunity.

The order is ambiguous and susceptible to more than one interpretation with respect to the individual defendants' qualified immunity defense. Given the organization of its ruling, the trial court's order seems to address the qualified immunity defense apropos to the tort claims. However, the language of the order is not clear on whether the trial court was ruling that a fact issue existed as to all the claims against the individual defendants, *i.e.*, whether their actions were "willful and wanton" not only as to the tort claims but also as to the contract and federal claims. We do not need to clarify this ambiguity with respect to the individual defendants' qualified immunity defense on the federal claims; earlier in the order the trial court expressly found that genuine issues of material fact existed on both the contract and federal claims. *See* discussion *infra* p. 241 n. 14.

On the petitioners' appeal of the trial court's summary judgment order, the court of appeals held that the denial on the issue of the individual defendants' qualified immunity for the federal claims was not an immediately appealable order. The court of appeals reached this decision because the trial court denied the motion on the basis of existing genuine material issues of fact. The court of appeals further held that, as to the petitioners' allegations that Brace's contract claims were barred by the CGIA because they could have been brought as tort actions, the trial court's determination was not an appealable interlocutory order. In holding thus, the court of appeals reasoned that the contract claims were properly pled as such and sovereign immunity was not available. *Brace*, 899 P.2d at 304–305. The court of appeals addressed separately the petitioners' claims that sovereign immunity barred Brace's claim of promissory estoppel, but, as with the other contract claims, also held that the trial court's determination was not an immediately appealable order as sovereign immunity did not apply.[9] *Id.* at 305.

## II.

We turn first to the appealability of the trial court's determination that the individual defendants were not entitled to qualified immunity on Brace's federal claims.

### A.

In *Harlow v. Fitzgerald*, the United States Supreme Court explained that quali-

---

9. Even though the court of appeals concluded that it lacked appellate jurisdiction to review Brace's contract claims, it nevertheless addressed those claims on the merits and determined, from the face of the complaint, that the claims were properly pled as contract claims. However, under our holding in *Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995), the evaluation of whether a contract claim is barred by the CGIA because it could have been brought in tort is not restricted to the face of the pleadings. *See* discussion *infra* p. 244.

fied immunity shields government officials who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Subsequently, the Supreme Court noted that:

> *Harlow* thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

*Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original); *see also Moody v. Unger-er,* 885 P.2d 200, 202 (Colo.1994) ("The purpose of qualified immunity is to shield a government employee from the burdens associated with trial which include distraction from governmental responsibilities, inhibiting discretionary decision making, and the disruptive effects of discovery.").

■ In order to overcome a qualified immunity defense, the plaintiff must plead a constitutional violation. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Moreover, the constitutional right, alleged to have been violated, must have been "clearly established" at the time of the action in question. *Id.; Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815. This last requirement ensures that "reasonable officials in [the individual] defendants' situation would have understood their conduct violated that right." *Liebson v. New Mexico Corrections Dep't,* 73 F.3d 274, 276 (10th Cir.1996).

### B.

In its decision, the court of appeals recognized "United States Supreme Court decisions which have held that states may not establish procedural rules which operate to defeat federal claims." *Brace,* 899 P.2d at

305. However, it concluded that the trial court made no determination on the federal claims but rather "determined only that questions of material fact precluded summary judgment on these issues." *Id.* Thus, the court of appeals reasoned that the trial court's order was not a final, appealable judgment and, consequently, it was bereft of jurisdiction to entertain the appeal. *Id.* We do not agree with the court of appeals' analysis. Rather, we find that federal case law does control and, pursuant to that case law, the trial court failed to undertake the proper analysis. Its failure to do so left the question of which part of its order was immediately appealable indeterminate. In short, the court of appeals had no way of ascertaining whether or not the trial court's order was subject to immediate appeal. Hence, the proper course of action would have been to remand to the trial court and instruct that court to particularize its findings.

■ We preface our analysis with the well-established principle that the United States Constitution and federal laws passed pursuant to it are equally enforceable in federal and state courts under the Supremacy Clause. Moreover, "[t]he elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett By and Through Howlett v. Rose,* 496 U.S. 356, 375, 110 S.Ct. 2430, 2442, 110 L.Ed.2d 332 (1990); *see also Neil v. Espinoza,* 747 P.2d 1257 (Colo.1987) (applying federal case law in an action brought under 42 U.S.C. section 1983). State and federal courts have concurrent jurisdiction over section 1983 cases. *Howlett,* 496 U.S. at 358, 110 S.Ct. at 2433. Thus, in an action brought under 42 U.S.C. section 1983, a state actor cannot avoid liability under a state immunity provision. *Martinez v. State of California,* 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980).

### C.

■ Interlocutory appeals are the exception to the general rule that an appeal cannot be taken from anything other than a final decision. *Johnson v. Jones,* —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). Under federal law, this policy is reflected in

28 U.S.C. section 1291 (1994) which provides that a federal district court can only hear appeals from final decisions. An analogous provision is found in Colorado law at section 13–4–102(1), 6A C.R.S. (1987), which states that "the court of appeals shall have initial jurisdiction over appeals from final judgments of the district courts." *See also* C.A.R. 1(a)(1) (appeal to the appellate court may be taken from "[a] final judgment of any district, superior, probate, or juvenile court"). A denial of a summary judgment motion is not generally considered a final decision which is immediately appealable under section 13–4–102(1), 6A C.R.S. (1987), or C.A.R. 1(a)(1).[10] *See Manuel v. Fort Collins Newspapers, Inc.*, 631 P.2d 1114, 1116 (Colo.1981).

■ In recognition that the doctrine of qualified immunity loses its potency if an individual defendant is erroneously allowed to stand trial, the United States Supreme Court has carved out an exception to the general rule prohibiting appeals of non-final decisions. Thus, the Supreme Court has permitted some immediate appeals of interlocutory orders in the context of a summary judgment motion based on the doctrine of qualified immunity. *See Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815 ("[Qualified immunity] is an *immunity from suit* rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.") (emphasis in original). However, this exception is tempered by the constraint that an interlocutory appeal of a summary judgment order premised on qualified immunity is *not* immediately appealable if it is based on the trial court's finding that there is a genuine triable issue of material fact.

The Supreme Court recently addressed the issue of the immediate appealability of a federal district court's denial of a qualified immunity defense in *Johnson*, —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238. In *Johnson*, the plaintiff brought an action against five police officers based on an excessive use of force claim under 42 U.S.C. section 1983.[11] Three of the police officers moved for summary judgment, asserting that the plaintiff could not come forward with any evidence that those particular officers had beaten him or had even been present at the beating. At his deposition the plaintiff had stated that the officers used excessive force in arresting him and booking him (he did not provide the specific names of the officers). The district court denied the motion based on a *"fact-related dispute about the pretrial record." Johnson*, —— U.S. at ——, 115 S.Ct. at 2153 (emphasis in original). The district court found that the plaintiff's theory of the case was supported by sufficient circumstantial evidence. *Id.* The appellate court denied the police officers' appeal, holding that it lacked appellate jurisdiction.

■ In evaluating the appealability of the district court's ruling, the Supreme Court reviewed the three relevant "background principles" which governed the outcome of the issue. First, the Supreme Court noted that 28 U.S.C. section 1291 permits appeal of final decisions only. Second, the court explained that, under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), certain collateral orders are subject to immediate appeal because they amount to final orders.[12] Third, the

10. We recently granted certiorari in *Feiger, Collison & Killmer v. Jones*, No. 95SC150 (Colo. Sept. 11, 1995) (granting certiorari). One of the issues raised in *Feiger* on certiorari review is whether the court of appeals erred in holding that a denial of a motion for summary judgment (premised on a point of law) is an appealable order. We express no opinion here on the merits of that case.

11. The plaintiff in *Johnson* was diabetic and experienced insulin shock which manifests symptoms like those of drunkenness. The plaintiff was arrested in connection with this episode by the police officers who discovered him. When

the plaintiff recovered, he found himself in the hospital with several broken ribs.

12. Under the "collateral order doctrine," the United States Supreme Court has allowed an immediate appeal of certain orders. Hence, a district court's decision is subject to immediate appeal if it "determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). Under

Supreme Court reviewed its earlier holding in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985):

> [A] district court's order denying a defendant's motion for summary judgment was an immediately appealable "collateral order" (*i.e.,* a "final decision") under *Cohen,* where (1) the defendant was a public official asserting a defense of "qualified immunity," and (2) the issue appealed concerned, not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of "clearly established" law.

*Johnson,* —— U.S. at ——, 115 S.Ct. at 2155 (quoting *Mitchell,* 472 U.S. at 528, 105 S.Ct. at 2816). Hence, the *Johnson* court concluded that if review of the district court's summary judgment order only entailed a determination of law, rather than the " 'correctness of the plaintiff's version of the facts,' " the order was immediately appealable. *Id.* at ——, 115 S.Ct. at 2156 (quoting *Mitchell,* at 528, 105 S.Ct. at 2816). In *Johnson,* the court ultimately decided that a summary judgment motion on qualified immunity that raises a question of sufficiency of the evidence is not an appealable final order.[13] In so concluding, it was primarily persuaded because:

> [T]he existence, or non-existence of a triable issue of fact—is the kind of issue that trial judges, not appellate judges, confront almost daily. Institutionally speaking, appellate judges enjoy no comparative expertise in such matters.... And, to that extent, interlocutory appeals are less likely to bring important error-correcting benefits here than where purely legal matters are at issue, as in *Mitchell.*

*Cohen,* such an order must "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978).

13. In *Johnson,* the Supreme Court acknowledged that its holding arguably undercut the policy considerations for qualified immunity:

> [W]hether a district court's denial of summary judgment amounts to (a) a determination about pre-existing "clearly established" law, or (b) a

*Id.* at —— – ——, 115 S.Ct. at 2157–58 (citation and parenthetical omitted). The Supreme Court also expressed concern that, in order to resolve fact controversies, appellate courts would have to expend vast amounts of time to read pretrial records, conflicting depositions, affidavits, and other discovery materials, which would engender greater delay in the litigation process. *Id.* at ——, 115 S.Ct. at 2158. Furthermore, after trial the disputed fact issue could potentially reappear in the appellate court's province, leading to duplication of appellate efforts. *Id.*

The Tenth Circuit Court of Appeals recently applied the Supreme Court's holdings in *Johnson* and *Mitchell* in reviewing a district court's summary judgment order and determining what part of the order was appealable:

> One well recognized exception allows public officials asserting a defense of qualified immunity to appeal a district court's denial of summary judgment on that defense if the issue on appeal is whether the constitutional right that was allegedly violated was "clearly established." *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). *However, this exception does not allow an immediate appeal of a "district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."* *Johnson,* [—— U.S. at ——] 115 S.Ct. at 2159; *see Sevier v. City of Lawrence,* 60 F.3d 695, 700 (10th Cir.1995).

*Myers v. Oklahoma County Bd. of County Com'rs,* 80 F.3d 421, 424 (10th Cir.1996) (emphasis supplied). In *Myers,* the plaintiffs brought an action under 42 U.S.C. section 1983 for excessive force when a call to 911 resulted in the shooting and death of a sui-

determination about "genuine" issues of fact for trial, it still forces public officials to trial.... And, to that extent, it threatens to undercut the very policy (protecting public officials from lawsuits) that (the *Mitchell* court held) militates in favor of immediate appeals. *Johnson,* —— U.S. at ——, 115 S.Ct. at 2158. However, the court went on to explain that "[n]onetheless, the countervailing considerations that we have mentioned (precedent, fidelity to statute, and underlying policies) are too strong to permit the extension of *Mitchell* to encompass the appeals from the orders of the sort before us." *Id.*

cidal individual by the officers responding to the call. The individually named police officer-defendants filed a summary judgment motion on the basis of a qualified immunity defense. The motion was denied because the district court found that " 'there [was] a genuine issue for trial regarding the reasonableness of defendant's conduct.' " *Id.* at 424 (quoting the district court's order). The district court also noted that " 'plaintiffs raised several factual issues from which a reasonable person could conclude the degree of force used by the defendants was excessive under the facts and circumstances at the time.' " *Id.* (quoting the district court's order). The Tenth Circuit concluded that, under *Mitchell* and *Johnson*, it was without jurisdiction to consider that portion of the summary judgment order.

■■■ Thus, the appealability of a motion for summary judgment on section 1983 claims premised on the doctrine of qualified immunity hinges on the trial court's basis for denying the motion. The trial court's order is immediately appealable if its denial was based on a question of law, *i.e.*, the trial court found that there were sufficient facts pled to support a violation of a clearly established law. Alternatively, if the trial court found a triable question of fact, that determination is not immediately appealable.

#### D.

■■■ Under the controlling case law discussed above, we must construe the trial court's summary judgment order before we can ascertain what portions of the order, if any, are immediately reviewable. The nature of the trial court's order here renders this near impossible. As previously noted, the trial court determined that, as to Brace's federal claims, material issues of fact existed so as to preclude summary judgment.[14] The trial court did not address the purely legal question of whether the facts could sustain a violation of clearly established law. Therefore, we cannot ascertain if the trial court undertook this analysis and determined that the facts, as alleged, could support a violation of a clearly established constitutional right.

Given the brevity of the trial court's order, the only way we can evaluate the order is by placing ourselves in the position of the trial court at the time it was making its determination. The trial court rendered its determination solely on the papers. Review of the complaint, the answer, and the motion papers (including attachments) before the trial court, that predate its order, discloses that the major bone of contention raised by the petitioners in their summary judgment motion was whether Brace resigned or was terminated. We therefore start our analysis assuming that this disputed issue was the basis for the trial court's finding that there was a genuine issue of material fact.[15] We turn now to the specific constitutional violations asserted by Brace.

---

**14.** The trial court's ruling on the qualified immunity defense is ambiguous. *See* discussion *supra* pp. 236–237 (quoting trial court's order). However, because the trial court prefaced its discussion with a general finding that it could not grant summary judgment on Brace's federal claims based on the existence of a genuine issue of material fact, we need not address any ambiguity concerning the breadth of its later statement, that it could not grant summary judgment on the qualified immunity defense because whether the individual's acted in a "willful and wanton" manner was an unresolved fact issue. For purposes of this opinion, we assume that the general finding of a genuine issue of material fact on Brace's federal claims, raised earlier in the trial court's order, predominates. We note, however, that for purposes of qualified immunity under 42 U.S.C. section 1983, "willful and wanton" is not the applicable standard. Under federal case law, the dispositive question in a section 1983 action is not the subjective intent of the state actor.

*Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986) (section 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the *underlying constitutional right*"). An individual defendant may still be liable under section 1983 regardless of whether his or her actions were "willful and wanton." In contrast, for purposes of state law claims, an individual defendant will be shielded by the qualified immunity defense for actions taken within the scope of employment unless his or her actions were "willful and wanton." *Trimble v. City & County of Denver,* 697 P.2d 716, 729 (Colo.1985) (adopting the "willful and wanton" standard to overcome the "type of immunity an official ... performing discretionary acts within the scope of his office, enjoys under Colorado law").

**15.** Indeed, the petitioners reasserted this same factual dispute in their papers submitted to this court.

Brace raised six different grounds for relief under 42 U.S.C. section 1983. The claims are premised on the following constitutional violations: (1) First Amendment and freedom of speech (based on suspension and termination in retaliation for Brace's actions against Kane); (2) Fourteenth Amendment, procedural due process, and property interest (based on suspension and termination in retaliation); (3) Fourteenth Amendment, procedural due process, and property interest (based on the petitioners' unilateral amendment to the ordinance purporting to eliminate Brace's right to termination for cause only); (4) Fourteenth Amendment, procedural due process, and property interest (based on the petitioners' unilateral amendment to the ordinance eliminating Brace's notice and opportunity to respond to a suspension and/or termination); (5) Fourteenth Amendment, procedural due process, and property interest (based on the petitioners' unilateral amendment to the ordinance); and (6) Fourteenth Amendment, due process, and liberty interest (based on the petitioners' intentional conduct in defaming Brace to the media, at public meetings, etc.).

These loosely pled claims are repetitive and can be broken down into two categories. The first category comprises claims based on retaliation for Brace's purported whistleblowing activity (Brace's first two claims and his sixth). The second category is based on the petitioners' unilateral amendment to the ordinance in question (Brace's remaining three claims). Assuming that the genuine issue of material fact is the question of Brace's resignation/termination, that issue is significant in the first category of Brace's federal claims, based on a retaliation theory. If Brace resigned and was not terminated, his constitutional claims based on a retaliation theory would drop out from under him. However, the remaining claims may not be as significantly affected by such a fact issue.[16] Hence, it is difficult for us to follow the trial court's reasoning for denying summary judgment on all of Brace's federal claims. Moreover, the trial court should have initially determined if, assuming the truth of Brace's version of the facts, there was a violation of a clearly established constitutional right for each of Brace's six federal claims. There is no discussion in the trial court's order that indicates such an analysis was undertaken.

Given these circumstances, we cannot reconstruct the trial court's reasoning for denying the petitioners' summary judgment motion based on qualified immunity. And, consequently, we cannot definitively ascertain what portion of the trial court's order is immediately appealable and what portion is not. In so finding, we are mindful of the United States Supreme Court's admonishment in *Johnson* that it might be necessary for an appellate court to "undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Johnson*, —— U.S. at ——, 115 S.Ct. at 2159. However, a thorough review of the pretrial record in this case does not further the goals of the applicable analysis. The questions of law and fact are simply too intertwined and inseparable.

Pursuant to *Mitchell* and *Johnson*, the trial court must undertake a two-part analysis. The proper framework for the analysis requires the trial court to first determine whether the facts—as pled by Brace—sufficiently state a violation of a clearly established constitutional right. If not, the inquiry stops there. Alternatively, if the trial court finds that Brace has met this burden, it must also determine, under a summary judgment standard, if there are genuine issues of material fact such that the issue of qualified immunity must await determination by a trier of fact. The first part of the analysis is immediately reviewable, but the second part is not. Naturally, the trial court's order may encompass both types of

---

**16.** There were other issues of fact raised before the trial court that it may have considered with respect to those other claims. For example, while the petitioners claim that Brace was sent a memo on the new ordinance, Brace contends that he was never so notified. The petitioners also claim that Brace's suspension and termination were related to his disputes with personnel in the Lakewood Housing Division and were not driven by improper motives such as retaliation. The record is replete with other disputes (*e.g.,* whether Brace "disclosed" Kane's perceived impropriety such that a free speech claim could be supported).

findings. In that event, the court of appeals reviews only the legal questions. Nevertheless, if the court of appeals finds that Brace has not alleged facts from which a violation of a clearly established constitutional right can be discerned, the trial court's finding that there are issues of fact with respect to that claim is meaningless and does not preclude a grant of summary judgment. In short, there are no genuine issues of *material* fact if the plaintiff has not pled a violation of a clearly established constitutional right. Here, the trial court appears to have skipped the first part of the inquiry. We therefore remand to the court of appeals on this issue with instructions to the trial court that it apply the appropriate analysis under the Supreme Court's holdings in *Mitchell* and *Johnson.*

Because of our disposition of this first issue, we need not address the petitioners' second issue, *i.e.,* if the petitioners are entitled to qualified immunity as a matter of law because there is no alleged violation of a constitutional right. Under these circumstances, that issue will be resolved by the trial court on remand and will be subject to immediate review by the court of appeals.

### III.

We turn now to Brace's state law claims. The petitioners assert that the trial court's determination denying their summary judgment motion on Brace's contract claims was an *immediately appealable order.* Although not specifically raised or argued by the parties, we also address whether the trial court erred in denying the individual defendants' summary judgment motion on the tort claims based on its finding of a triable issue of fact (*i.e.,* if their actions were "willful and wanton" under the CGIA).

### A.

As the starting point of its analysis, the court of appeals noted that, in 1992, the CGIA was amended to provide that the trial court's determination of *sovereign* immunity is a final judgment and subject to interlocutory appeal. *See* §§ 24–10–108, 10A C.R.S. (1995 Supp.), 24–10–118(2.5), 10A C.R.S. (1995 Supp.). However, the court of ap-

peals was not willing to extend the "limited exception to the general prohibition against interlocutory appeals [that] was legislatively created for determinations of sovereign immunity under the [CGIA]." *Brace,* 899 P.2d at 304. Thus, the court of appeals concluded that appeal of the trial court's denial of summary judgment on Brace's state law contract claims was precluded "because that denial was not a decision based upon sovereign immunity." *Id.* We disagree with the court of appeals because it incorrectly interpreted the applicable statutory provisions.

When determining if a claim is barred by the CGIA "[t]he dispositive question is whether the claim is a tort claim *or could be a tort claim* for purposes of analysis under the Governmental Immunity Act." *City & County of Denver v. Desert Truck Sales, Inc.,* 837 P.2d 759, 764 (Colo.1992) (emphasis in original). Therefore, the manner in which the claim is characterized is not controlling. *Id.* Under the plain language of section 24–10–108, 10A C.R.S. (1995 Supp.), the trial court's determination is immediately appealable.

Section 24–10–108, 10A C.R.S. (1995 Supp.), provides as follows:

> Except as provided in sections 24–10–104 to 24–10–106, sovereign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant. If a public entity raises the issue of sovereign immunity prior to or after the commencement of discovery, the court shall suspend discovery, except any discovery necessary to decide the issue of sovereign immunity, and shall decide such issue on motion. *The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal.*

(Emphasis supplied.)

Similarly, section 24–10–118(2.5), 10A C.R.S. (1995 Supp.) provides:

> If a public employee raises the issue of sovereign immunity prior to or after the commencement of discovery, the court shall suspend discovery; except that any

discovery necessary to decide the issue of sovereign immunity shall be allowed to proceed, and the court shall decide such issue on motion. *The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal.*

(Emphasis supplied.)

Although the trial court explained the basis for its decision as the existence of genuine issues of material fact, the trial court also implicitly made a finding that the contract claims could not be brought in tort.

In the process of concluding that it did not have appellate jurisdiction over the trial court's summary judgment order because sovereign immunity did not apply, the court of appeals briefly addressed Brace's contract claims and determined that Brace had properly pled those claims in contract and not in tort:

> [T]he complaint alleged that defendants' contractual obligations to plaintiff were created by representations, employee handbooks, personnel manuals, personnel practices, and city ordinances and proclamations.

*Brace,* 899 P.2d at 304. The court of appeals expounded more fully on the doctrine of promissory estoppel and found that because Brace alleged in his complaint that he relied to his detriment on Lakewood's policies to suspend and terminate only for cause, the promissory estoppel claim was properly characterized as a contract claim. *Id.* at 305.

However, under the CGIA, the issue is not whether a contract claim was properly pled as such, but rather, if the claim could have been brought as a tort. § 24–10–108, 10A C.R.S. (1995 Supp.). Accordingly, this is a jurisdictional issue under the CGIA and immediately appealable to the court of appeals. Thus, the court of appeals erred in stating that it lacked appellate jurisdiction to hear the appeal. Instead, the court of appeals should have considered the trial court's rul-

ing immediately. We therefore reverse the decision of the court of appeals on this issue and find that the trial court's order is immediately reviewable.

We explained recently that immunity under the CGIA is a jurisdictional issue. *Fogg v. Macaluso,* 892 P.2d 271, 276 (Colo.1995); [17] *see also Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 924 (Colo.1993) (trial court acts as factfinder to determine if the jurisdictional prerequisite notice provisions of the CGIA were satisfied). Therefore, the "trial court is authorized to make appropriate factual findings under C.R.C.P. 12(b)(1)" and need not treat the facts alleged by the non-moving party as true as it would under C.R.C.P. 12(b)(5). *Fogg,* 892 P.2d at 276; *see also* 2A James W. Moore & Jo Desha Lucas, *Moore's Federal Practice* ¶ 12–07 [2.–1] at 12–49 to 12–50 (2d ed.1995) (discussing the analogous Federal Rule of Civil Procedure 12(b)(1) and noting that "in resolving a motion under Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction to hear the action").

The nature of the trial court's ruling does not permit review. Nor can we reconstruct the reasoning underlying the trial court's finding that genuine issues of material fact exist precluding summary judgment on the contract claims. Therefore, on remand, the trial court must determine under the holdings of *Fogg* and *Trinity* if Brace's claims pled in contract could sound in tort. If there are fact questions that must be resolved in order to render this determination, the trial court may hold an evidentiary hearing pursuant to C.R.C.P. 12(b)(1). As with the genuine issues of material fact that exist with respect to Brace's section 1983 claims, the trial court's order must be sufficiently particularized to permit informed review by the court of appeals.

---

**17.** Our decision in *Fogg* postdates both the trial court's order and the court of appeals' decision reviewing that order.

## B.

The court of appeals did not address the trial court's dismissal of the summary judgment motion pursuant to the individual defendants' qualified immunity defense on Brace's tort claims. The individual defendants' claim of qualified immunity is based on the CGIA which protects individual public employees from personal liability for a tort allegedly committed by that employee when acting within the scope of his or her employment.[18] § 24–10–105, 10A C.R.S. (1988). The CGIA expressly provides that an employee loses that qualified immunity if the employee's act was "willful and wanton." The question here is whether, assuming there is a disputed issue of fact, an allegation that the employee's conduct was "willful and wanton" must be determined before trial or at trial. We address the issue because it is encompassed within the third and fourth certiorari issues presented for our review.[19] Moreover, addressing this issue at this stage is in the interests of judicial economy and clarity. Specifically, since our disposition of this case entails further fact finding by the trial court, we also determine if the trial court must undertake additional fact finding on the tort claims which were left pending against the individual defendants.

The same question surfaces with respect to the tort claims, that was raised by the petitioners on Brace's contract claims: whether the fact questions should have been resolved by the trial court as a jurisdictional matter or if those fact questions must await determination by a trier of fact. If the individual defendants' qualified immunity defense as to Brace's state law claims is jurisdictional (i.e., it provides immunity from suit ), it was within the trial court's aegis to resolve fact questions under Fogg. Alternatively, if the individual defendants' qualified immunity acts only as a defense, the question of "willful and wanton" must await determination by the trier of fact.

Section 24–10–118(2)(a), 10A C.R.S. (1995 Supp.), provides that:

A public employee shall be immune from liability in any claim for injury, whether brought pursuant to this article, section 29–5–111, C.R.S., the common law, or otherwise, which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton; except that no such immunity may be asserted in an action for injuries resulting from the circumstances specified in section 24–10–106(1).

Under the clear terms of the above-quoted statute, which provides immunity from liability, an employee's qualified immunity is not immunity from suit, but rather a defense that can be raised by the public employee who is named in his or her individual capacity. In contrast to sections 24–10–108 and 24–10–118(2.5), 10A C.R.S. (1995 Supp.), the sections governing a governmental entity and public employee's sovereign immunity from suit, section 24–10–118(2)(a) does not provide for interlocutory appeal of an employee's qualified immunity claim. Moreover, section 24–10–108 specifically states that "sovereign immunity shall be a bar to any action."[20]

---

18. The petitioners asserted in their answer that the individual defendants were entitled to qualified immunity because they acted in objective good faith. In addition, the petitioners generally asserted that Brace's claims, if any, were barred under the CGIA.

19. Although these certiorari issues speak to "sovereign immunity," an analogous immunity was specifically extended to public employees, named in their individual capacities, by the General Assembly in 1985 when it added section 24–10–105, 10A C.R.S. (1988), to the statutory scheme.

20. As the United States Supreme Court has expressed, "the terms of [the sovereign's] consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Dalm, 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990) (internal quotation marks and citation omitted). Therefore, "[w]hether a claim falls within an exception to the GIA's waiver of sovereign immunity is a question of subject matter jurisdiction and, if raised before trial, it is appropriately addressed under C.R.C.P. 12(b)(1)." Fogg, 892 P.2d at 277. The same rationale does not apply to a qualified immunity defense raised by a public employee.

Thus, the legislature did not intend an individual defendant's immunity from tort suits, although derived from sovereign immunity, to have the same initially preclusive effect from suit. This is reflected in the "willful and wanton" standard which mandates a fact-based determination. Such a determination is not susceptible to resolution at an early stage in the litigation process before significant discovery has been undertaken unless there are no disputed issues of fact. Moreover, a "willful and wanton" determination potentially requires the weighing of testimony and evidence, functions which are usually in the province of the jury/trier of fact and not the trial court. Accordingly, on remand, the trial court need not address further the individual defendants' qualified immunity on Brace's tort law claims. A well pled claim that an employee acted willfully and wantonly must await determination at trial on the merits.

## IV.

For the foregoing reasons, we reverse the judgment of the court of appeals. We return the case to the court of appeals for remand to the trial court with directions to enter fact findings and conclusions of law, as appropriate, consistent with our decision. On Brace's state law contract claims, this may entail holding a hearing pursuant to C.R.C.P. 12(b)(1).