58 F.3d 1530
 Medicare & Medicaid Guide P 43,451
F.E.R., personally and on behalf of a class of patients
similarly situated; S.A., S.L.B., L.A.M., B.E.S., A.L.V.,
as the guardian ad litem for A.L.C.; A.L.C., a minor,
personally and on behalf of a class of patients similarly
situated, Plaintiffs-Appellants,
v.
Sally VALDEZ, Agent, Bureau of Medicaid Fraud, Division of
Investigation, Department of Public Safety, State of Utah;
Dennis Kroll, Attorney for Bureau of Medicaid Fraud,
Division of Investigation, Department of Public Safety,
State of Utah, Defendants-Appellees.
 No. 94-4097.
 United States Court of Appeals,
Tenth Circuit.
 July 10, 1995.
 
 Joro Walker (Brian M. Barnard and John Pace with her on the briefs), Utah Legal Clinic, Salt Lake City, UT, for plaintiffs-appellants.
 Brent A. Burnett, Asst. Atty. Gen. (Jan Graham, Utah Atty. Gen., with him on the brief), Salt Lake City, UT, for defendants-appellees.
 Before BRORBY, KELLY and HENRY, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 The plaintiffs are a group of patients (collectively the "Patients") of a psychiatrist who was the subject of a Medicaid fraud investigation. During the investigation, all of the psychiatrist's records were seized pursuant to a state search warrant. The Patients instituted a civil rights class action pursuant to 42 U.S.C. Sec. 1983 against three state agents (the "defendants")[1] alleging violations to their privacy rights. The Patients sought declaratory relief, injunctive relief and damages. On cross-motions for summary judgment, the district court denied the Patients' motion and granted the defendants' motion. The district court held the Patients' equitable claims were moot and the claim for damages must be dismissed because the defendants are protected by qualified immunity. We exercise jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 
 2
 The Utah Bureau of Medicaid Fraud was investigating a psychiatrist when it executed a search warrant and seized the psychiatrist's treatment and billing records. This seizure encompassed the Patients' records although none of the Patients were Medicaid recipients. Approximately three months later, a state circuit court sealed the material obtained during the seizure. During the investigation, the records containing information on the Patients' psychiatric treatment were made available to a variety of Bureau employees. The criminal investigation of the psychiatrist ended with an out-of-court civil settlement. In the settlement agreement, the psychiatrist consented to pay restitution and abstain from future participation in the Medicaid program. At the conclusion of the Bureau's investigation, the records were returned to the psychiatrist.
 
 
 3
 The Patients sued three state agents in their individual capacities alleging the Bureau's seizure of the psychiatric records violated the Patients' constitutional right to privacy. The Patients sought damages, a declaration that the seizure was unconstitutional and an injunction to have the records returned to the psychiatrist. The district court determined the Patients' claims for equitable relief were moot and granted the defendants' motion for summary judgment on the basis of qualified immunity. The Patients appeal.
 
 MOOTNESS
 
 4
 The initial issue in this case is whether the Patients' claims for equitable relief are moot. We review the question of mootness de novo as a matter of federal jurisdiction. Building & Constr. Dep't v. Rockwell Int'l, 7 F.3d 1487, 1491 (10th Cir.1993). To maintain a claim the Patients must present an actual, ongoing dispute. Honig v. Doe, 484 U.S. 305, 317, 108 S.Ct. 592, 600-01, 98 L.Ed.2d 686 (1988); Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 546, 96 S.Ct. 2791, 2796-97, 49 L.Ed.2d 683 (1976).
 
 
 5
 The Patients seek a declaratory judgment that the defendants invaded the privacy of the Patients. The Patients' claim for a declaratory judgment is similar to their claim for damages. In each, the Patients ask the court to determine whether a past constitutional violation occurred. In this dispute the alleged liability-producing act has already occurred. Because the question still exists as to whether the defendants violated the Patients' right to privacy, a controversy on the Patients' right to privacy still exists. But see Facio v. Jones, 929 F.2d 541, 544 (10th Cir.1991) (in discussing standing in a Sec. 1983 suit, the panel broadly stated a "plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future."). Therefore, the claim for a declaration that the defendants improperly invaded the privacy of the Patients when they seized the psychiatrist's files is not moot, and this claim will be discussed later with the claim for damages. See Yniguez v. Arizona, 975 F.2d 646, 647 (9th Cir.1992) ("A plaintiff's pursuit of nominal damages provides a sufficiently concrete interest in the outcome of the litigation to confer standing to pursue declaratory relief and thereby prevents mootness.").
 
 
 6
 However, the claim for injunctive relief is moot. The Patients are seeking an injunction to have their medical records returned to the psychiatrist, yet the records were returned at the end of the Bureau's investigation. There is no longer a dispute about the current possession of the medical files. There is no present controversy on the claim for injunctive relief because the explicit objective of the proposed injunction has been met: the records were returned.
 
 
 7
 The Patients argue the exceptions to mootness apply in this case. One exception to mootness is when the dispute is "capable of repetition yet evades review." Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983). To qualify for the exception, the Patients must show a reasonable likelihood that they will again suffer the alleged deprivation. See Honig, 484 U.S. at 318, 108 S.Ct. at 601; Lyons, 461 U.S. at 109, 103 S.Ct. at 1669. The Patients acknowledge their current psychiatrist is unlikely to be investigated again because he no longer treats Medicaid patients, yet they allege their psychiatric records may be confiscated by the Bureau again if they consult a new psychiatrist who subsequently becomes the target of a Medicaid investigation. This allegation is too speculative to support the mootness exception, which is only to be used in "exceptional situations." See Lyons, 461 U.S. at 109, 103 S.Ct. at 1669.
 
 
 8
 The Patients correctly note the general rule of law that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." United States v. W.T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). They argue their claim for injunctive relief is not moot because the defendants voluntarily returned the records to the psychiatrist. Yet, the records were returned at the end of the investigation and not in an effort to evade review.
 
 
 9
 In arguing voluntary cessation, the Patients rely on Longstreth v. Maynard, 961 F.2d 895 (10th Cir.1992), and Grant, 345 U.S. at 633-34, 73 S.Ct. at 897-98. In Longstreth, a prison vacated a policy that was being challenged by some of the prisoners, but the court found that the allegedly wrongful behavior by the prison could reasonably recur. 961 F.2d at 900. In holding a " 'voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice,' " 961 F.2d at 901 (quoting Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289, 102 S.Ct. 1070, 1074-75, 71 L.Ed.2d 152 (1982)), the court found the prison had the ability to change the policy again and affect the prisoners in the same way they were affected before. In Grant, a business executive voluntarily resigned from the companies' boards after the government sued to enjoin him from holding interlocking directorates in competing corporations. The Supreme Court found the executive was still free to return to his old ways even after resigning, therefore, the claim was not moot. 345 U.S. at 634, 73 S.Ct. at 898.
 
 
 10
 In the instant case, the Bureau returned the files and cannot simply decide to confiscate them again without a warrant issued by a detached and neutral magistrate. The allegedly wrongful action by the Bureau--taking the files from this psychiatrist--has ended. The investigation is closed and the psychiatrist's conduct has been rectified. The exception of voluntary cessation is not applicable to the Patients' request to have the files returned to the psychiatrist because that dispute has been completely eradicated.
 
 
 11
 However, if we read the Patients' claim for injunctive relief as an effort to enjoin future seizures, it may fit within the voluntary cessation exception. Assuming there is no problem with mootness, the Patients must still show they have standing to bring this claim. Thus, as in Lyons, the issue becomes "not whether that claim has become moot but whether [the Patients] meet[ ] the preconditions for asserting an injunctive claim in a federal forum." 461 U.S. at 109, 103 S.Ct. at 1669. The Patients must demonstrate a personal stake in the outcome, yet "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974). Also, abstract injury is not enough. Lyons, 461 U.S. at 109, 103 S.Ct. at 1669. To establish standing the Patients must demonstrate a sufficient likelihood that they will again be harmed in a similar manner. See Lyons, 461 U.S. at 111, 103 S.Ct. at 1670 ("Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim.").
 
 
 12
 The Patients argue "Non-Medicaid psychiatric patients throughout the state face the possibility that documents detailing their most intimate thoughts and feelings, records which they believe are secret and confidential, may be seized, examined and disclosed to and by state officials in the course of an investigation." The threat to the Patients personally, in this scenario, is not sufficiently real to establish standing. See Lyons, 461 U.S. at 103, 103 S.Ct. at 1665-66; Harris v. Champion, 51 F.3d 901, 908 (10th Cir.1995). The doctrine of voluntary cessation does not save the Patients' claim for injunctive relief because the Patients' "lack of standing does not rest on the termination of the [Bureau] practice but on the speculative nature of [their] claim that [they] will again experience injury as the result of that practice even if continued." Lyons, 461 U.S. at 109, 103 S.Ct. at 1669. The Patients fail to allege a realistic threat of seizure of their psychiatric treatment records, therefore the district court did not err in dismissing the Patients' claims for injunctive relief.
 
 PRIVACY
 
 13
 The remaining issue is whether the district court erred in finding the defendants were entitled to qualified immunity. We review the district court's grant of summary judgment on this issue de novo. Cummins v. Campbell, 44 F.3d 847, 850 (10th Cir.1994).
 
 
 14
 The first inquiry in assessing the state agents' defense of qualified immunity is whether the Patients met their burden of establishing a constitutional violation occurred at all and then whether the law was clearly established at the time the action occurred. Siegert v. Gilley, 500 U.S. 226, 231-32, 111 S.Ct. 1789, 1792-93, 114 L.Ed.2d 277 (1991); Hilliard v. Denver, 930 F.2d 1516, 1518 (10th Cir.), cert. denied, 502 U.S. 1013, 112 S.Ct. 656, 116 L.Ed.2d 748 (1991).
 
 
 15
 The right to be free from unreasonable searches and seizures originates in the Fourth Amendment and is applied to the states through the Fourteenth Amendment due process clause. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Constitution generally requires government officials to obtain a search warrant from an impartial judicial official based upon probable cause before seizing material. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The Patients allege the seizure of the psychiatrist's files was a clear violation of their constitutional right to privacy. However, the material was seized from the psychiatrist's office pursuant to a state search warrant. The Patients do not challenge the validity of the search warrant; thus we assume the warrant was valid. Instead, the Patients generally claim the seizure was unconstitutional.
 
 
 16
 The Patients allege the seizure was too broad and served no legitimate state interest. However, as discussed below, the seizure served the compelling state interest of ending fraud in the Medicaid program and the record fails to show how the search could have been narrowed. A reasonable government official has not violated the Fourth Amendment when the official conducts a search pursuant to a facially valid warrant. See Jones v. Denver, 854 F.2d 1206, 1208-09 (10th Cir.1988) (a reasonable officer concluding that a search warrant was supported by probable cause is protected by qualified immunity). Because the seizure was conducted pursuant to and within a valid search warrant, the Patients have presented no grounds to claim a constitutional violation.
 
 
 17
 The Patients' brief also alleges a violation of privacy in the dissemination of information from the seized files. They allege improper handling of confidential material resulted in a violation of their privacy. There is a constitutional right to privacy in preventing disclosure by the government of personal matters. See Whalen v. Roe, 429 U.S. 589, 599 & n. 24, 97 S.Ct. 869, 876-77 n. 24, 51 L.Ed.2d 64 (1977). To determine a constitutional violation of privacy, the Tenth Circuit adopted a balancing test. Flanagan v. Munger, 890 F.2d 1557, 1570 (10th Cir.1989) (citing Denver Policemen's Protective Ass'n v. Lichtenstein, 660 F.2d 432, 435 (10th Cir.1981)). We must consider (1) whether the Patients have a legitimate expectation of privacy in their psychiatric records, (2) whether disclosure of this information served a compelling state interest, and (3) whether the state could have achieved its objectives in a less intrusive manner.
 
 
 18
 The defendants concede the Patients have a legitimate expectation of privacy in the medical records. Thus we move to the second inquiry. The second prong of Lichtenstein requires the defendants' actions serve a compelling state interest. Here, the defendants were acting to prevent and punish Medicaid fraud. The state's need to investigate and prosecute abuses of the state Medicaid program is a compelling interest.
 
 
 19
 The Patients had an expectation of privacy in their medical records and the state was serving a compelling interest in trying to protect its Medicaid program; therefore, we are left with the final prong: whether the dissemination of the material was made in the least intrusive manner possible. Because the constitutional right to privacy in this case is being analyzed in the context of qualified immunity, the burden is on the Patients. See Hilliard, 930 F.2d at 1518. They bear the burden of demonstrating a constitutional violation occurred.
 
 
 20
 The defendants claim they needed the records to determine if Medicaid patients were being billed at the same rate as non-Medicaid patients, if the Medicaid patients were being billed for individual therapy when in fact the treatment was group therapy, if billing was falsely made, if medications billed to Medicaid patients had been diverted for resale to non-Medicaid patients, and if the psychiatrist contra-indicated medication or over-prescribed medication. The Patients argue the Bureau's treatment of the files was not the least intrusive method available because the Bureau took every record in the doctor's office, failed to immediately seal the material, and failed to edit and redact the materials to protect the Patients' privacy. However, the Patients do not support these arguments with sufficient facts for us to determine whether the Bureau could have behaved in a less intrusive manner in respect to the Patients' files. The record simply informs us the psychiatrist's files were partially in hard copy and the rest were computer files. The defendants claim the billing and treatment records were so intertwined that the handling of the material could not be less intrusive than it was. The Patients have failed to rebut the defendants' assertion that the files could not be separated effectively to protect the Patients' treatment records. The record supports the conclusion that the psychiatrist's files were handled in the least intrusive manner.
 
 
 21
 The Patients have failed to meet their burden in demonstrating a constitutional violation occurred. Therefore, the defendants are entitled to qualified immunity from this Sec. 1983 action.
 
 CONCLUSION
 
 22
 The Patients are unable to make a reasonable showing that their psychiatric records will again be subjected to a seizure by the Bureau. Therefore, their claim for injunctive relief is moot due to the return of the records to the psychiatrist, and they lack standing to enjoin future seizures.
 
 
 23
 We affirm the district court's grant of summary judgment for the defendants on the remaining claims because the Patients failed to show a constitutional violation and the defendants were thus entitled to qualified immunity. Judgment AFFIRMED.
 
 
 
 [1]
 One of the defendants, Lieutenant Susan Jones, settled out of court and is not a party to this appeal