**STATE BOARD OF CHIROPRACTIC EXAMINERS; Dr. William Dold, in his official capacity; Dr. Richard Ratliff, in his official capacity; Dr. Melanie Tiahrt, in her official capacity; Michelle M. Lucero, in her official capacity; Dr. Randy Baca, in his official capacity; Linda K. Baker, individually and in her official capacity; and the State of Colorado, Petitioners,**

v.

**Alvin STJERNHOLM, D.C., and Elsie Stjernholm, Respondents.**

**No. 96SC44.**

Supreme Court of Colorado, En Banc.

April 7, 1997.

Hall & Evans, L.L.C., Thomas J. Lyons, Pamela Skelton, Malcolm S. Mead, Denver, for Petitioners State Board of Chiropractic Examiners, Dr. William Dold, Dr. Richard Ratliff, Dr. Melanie Tiahrt, Michelle M. Lucero, Dr. Randy Baca, and the State of Colorado.

Wood, Ris & Hames, P.C., F. Michael Ludwig, David M. Dodero, Denver, for Petitioner Linda K. Baker.

Irvin M. Kent, Greenwood Village, for Respondents.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari to review whether the court of appeals was correct in determining *res judicata* to be inapplicable to this case and in ordering trial of the 42 U.S.C. § 1983 (1994) (section 1983) claims of the plaintiffs-respondents, Dr. Alvin and Ms. Elsie Stjernholm,[1] against the State Board of Chiropractic Examiners, and William Dold, Richard Ratliff, Melanie Tiahrt, Michelle Lucero, and Randy Baca, in their official capacities (collectively "the Board"). The court of appeals also ordered trial of Stjernholm's section 1983 claim against Assistant Attorney General Linda Baker who prosecuted the state's case for suspension of the doctor's license in the quasi-adjudicatory disciplinary proceeding.[2]  We reverse and re-

---

1. In this court, Ms. Stjernholm abandoned her claims and we address the certiorari issues with regard to Dr. Stjernholm only.

2. The certiorari issues were stated as follows:

(1) Whether the court of appeals applied an improper standard when holding that the claims which could have been resolved in earlier litigation between the same parties are not now barred by the doctrine of *res judicata*.

(2) Whether the court of appeals applied an improper standard when holding that relief which could have been requested in earlier litigation between the same parties, but was not, is not now precluded by the doctrine of *res judicata*.

(3) Whether the court of appeals applied an improper standard when it determined to remand Alvin Stjernholm's claims for an examination of the constitutionality of the action taken where a mere technical violation of an implementing statute should not support a claim for deprivation of due process cognizable under 42 U.S.C. § 1983 (1988), making it

mand with directions to the court of appeals to reinstate the judgment of the district court dismissing the complaint.

## I.

This case arises out of a summary license suspension which the Board imposed on Dr. Stjernholm (Stjernholm) in the course of a quasi-judicial disciplinary proceeding under the Chiropractic Act, section 12–33–119, 5A C.R.S. (1991 & 1996 Supp.). Three administrative disciplinary proceedings, two section 1983 actions, and three decisions of the court of appeals involving the Board and Stjernholm precede our decision.

In 1987, the Board brought disciplinary proceedings against Stjernholm, a chiropractic doctor, for record keeping violations. In its Final Agency Order of December 15, 1987, the Board placed Stjernholm on probation for six months and ordered him, *inter alia*, to obtain a records monitor to review his patient records. In a second disciplinary proceeding, the Board found that Stjernholm had disobeyed the previous Final Agency Order of 1987 ordering him to secure a records monitor and, in an order dated July 7, 1989, the Board suspended Stjernholm's license to practice for ninety days. That order did not become effective until October 5, 1989, and apparently became final without Stjernholm filing an Administrative Procedure Act judicial review action. Stjernholm did file an action in district court against the Board, arguing that suspension of his license was in violation of section 1983. The Board filed a motion for summary judgment alleging that the court lacked jurisdiction because the Board was not a "person" for purposes of section 1983. The district court agreed and dismissed the action. The court of appeals affirmed that decision in *Stjernholm v. Colorado State Board of Chiropractic Examiners*, 820 P.2d 1166, 1167 (Colo.App.1991) (*Stjernholm I*).

A third disciplinary proceeding ensued. In November 1989, on its own motion, the Board commenced an investigation of a possible violation by Stjernholm of the Board's July 7, 1989 suspension order. According to the findings of fact entered by the Administrative Law Judge (ALJ), which were part of the record in *Stjernholm v. Colorado State Board of Chiropractic Examiners*, 865 P.2d 853 (Colo.App.1993) (*Stjernholm II* ), and are included in the record of this section 1983 action, Mary Gorham and other persons not named in the action before us acted as investigators for the Board in this investigation. In response to a request by Gorham, Attorney Baker of the Attorney General's Office (Baker) supplied Gorham with names of persons and organizations who might possess pertinent information. But Baker did not conduct or participate actively in this investigation.

Nearly a year later, on December 6, 1990, the Board voted to summarily suspend Stjernholm's license to practice for violations of the earlier suspension order and directed Baker to prepare the necessary pleadings, including the Order of Summary Suspension, and other advocatory actions in the disciplinary proceedings. The Board issued its Order of Summary Suspension on February 8, 1991. The Board's order recited that it had reasonable grounds to believe that Stjernholm "has been guilty of deliberate and willful violation of the Chiropractic Practice Act" within the ambit of section 24–4–104(4), 10A C.R.S. (1988), of the State Administrative Procedure Act (APA) regarding summary license suspension. The Board, however, did not enter a finding under the Chiropractic Act, § 12–33–119(5), 5A C.R.S. (1991), and the APA, § 24–4–104(4), that there existed an emergency justifying the summary license suspension.

After suspending Stjernholm's license, the Board then caused an adjudicatory hearing[3] to be held before an ALJ, who held a five day hearing in May and then issued her Initial Decision in June of 1991. The ALJ found that Stjernholm had violated the Board's July 7, 1989 Order, and section 12–33–

---

unnecessary to address the constitutionality of a summary suspension under § 24–4–104(4), 10A C.R.S. (1988), at all.

(4) Whether the court of appeals erred in reversing summary judgment in favor of petition-er Linda K. Baker on respondent's claim under 42 U.S.C. § 1983 (1988).

**3.** The ALJ had jurisdiction pursuant to section 12–33–119, 5A C.R.S. (1991).

117(1)(f), 5A C.R.S. (1991), of the Chiropractic Act,[4] by sending a letter on his office letterhead to an insurance company for a patient while under suspension. However, the ALJ considered this violation to be relatively insignificant and recommended to the Board that Stjernholm not receive additional discipline.

By its Final Agency Order of December 20, 1991, the Board adopted the ALJ's findings of fact. The Board found that Stjernholm had violated section 12–33–117(1)(b), 5A C.R.S. (1991), of the Chiropractic Act,[5] which provides for revocation or suspension of a chiropractic license based on "[u]nprofessional, incompetent, or negligent conduct." The Board determined that Stjernholm had acted unprofessionally by practicing while under the prior suspension and by failing to secure a records monitor, as the Board had ordered. Agreeing with the ALJ's recommendation, the Board did not impose any further disciplinary sanction against Stjernholm. The Board also acted to lift the previously imposed summary suspension pending review of its agency actions.

Under the judicial review provisions of the APA, § 24–4–106(11), 10A C.R.S. (1988),

4. Section 12–33–117(1)(f) states as follows:
   (1) The board may refuse, suspend, or revoke a license, including but not limited to a license under section 12–33–113, to practice chiropractic or electrotherapy by chiropractors for any of the following causes:
   . . . .
   (f) Disobedience to a lawful rule or order of the board. . . .
   Section 12–33–117(2)(a), 5A C.R.S. (1991), further provides that:
   (2) For the purpose of this article, any one of the following acts by a licensed chiropractor is declared to constitute unprofessional conduct:
   (a) Practicing while license is suspended. . . .

5. Section 12–33–117(1)(b) has since been amended. Section 12–33–117(1)(b) and (m), 5A C.R.S. (1996 Supp.), now provides that the Board may issue a letter of admonition to a licensee, or may revoke, suspend, deny, refuse to renew, or may impose conditions on a licensee's license for the following reason:
   (b) An act or omission that constitutes negligent chiropractic practice or fails to meet generally accepted standards of chiropractic practice;
   . . . .
   (m) Practicing with a suspended or expired license.

6. Under section 12–33–121, 5A C.R.S. (1991), of the Chiropractic Act, judicial review of all final

Stjernholm appealed the Board's summary suspension order and its Final Agency Order to the court of appeals alleging that (1) the Board had acted contrary to law in summarily suspending Stjernholm's license, and (2) the Board had erred in finding that he had engaged in unprofessional, incompetent, or negligent conduct for practicing while under the prior suspension and failing to secure a records monitor.[6] In *Stjernholm II*, 865 P.2d at 856, the court of appeals upheld the Board's unprofessional conduct determination but also held that the Board did not have authority to summarily suspend Stjernholm's license without a finding of emergency.

Interpreting section 24–4–104(4) of the APA and section 12–33–119(5) of the Chiropractic Act, the court of appeals concluded that these sections, when read in conjunction, do not provide for summary license suspension merely for a deliberate and wanton violation of the Chiropractic Act. Rather, summary suspension by the Board must also be accompanied by a finding of emergency justifying license suspension in the interest of the public health, safety, or welfare. *See Stjernholm II*, 865 P.2d at 855.[7] Because the

orders and other actions of the Board bypasses the Denver District Court in favor of initial jurisdiction in the court of appeals.

7. Section 12–33–119(5) states in relevant part that:
   No previously issued license to engage in the practice of chiropractic shall be revoked or suspended until after a hearing conducted pursuant to section 24–4–105, C.R.S., except as provided for emergency situations by section 24–4–104, C.R.S.

   Section 24–4–104(4) provides that:

   Where the agency has reasonable grounds to believe and finds that the licensee has been guilty of deliberate and willful violation or that the public health, safety, or welfare imperatively requires emergency action . . . it may summarily suspend the license pending proceedings for suspension or revocation which shall be promptly instituted and determined.

   Construction of these two statutory provisions is not before us. Consistent with *Colorado State Board of Medical Examiners v. Colorado Court of Appeals*, 920 P.2d 807, 815 n. 10 (Colo.1996), we express no opinion on the court of appeals construction of the two statutory provisions in *Stjernholm II*. Nevertheless, the parties to that

Board made no finding justifying emergency action in the issuance of the suspension, the court set aside the suspension: "We hold that, in construing the two sections together, the Chiropractic Act does not provide for summary license suspension for a deliberate and willful violation of the act, but rather limits summary suspension to those situations in which the public health, safety, or welfare requires emergency action." *Id.* at 855.

Prior to the resolution of *Stjernholm II,* and approximately two weeks before the Board issued its Final Agency Order lifting the summary suspension, Stjernholm filed his second section 1983 action, this case, against the Board and Baker in district court. The second amended complaint, at issue here, seeks the following relief against the Board for violation of federal constitutional rights and section 1983:(1) injunctive relief preventing continuous irreparable injury for violating Stjernholm's due process rights; (2) declaratory relief holding unconstitutional the summary suspension of Stjernholm's license to practice; (3) declaratory relief determining that section 24–4–104(4) is unconstitutional and that the Board's actions are in violation of section 1983; and (4) declaratory relief determining that section 24–4–104(4) as applied to Stjernholm is unconstitutional and in violation of section 1983.

With respect to Baker, Stjernholm alleged the following three claims for relief: (1) Baker had violated Stjernholm's constitutional rights through her investigation of him in violation of section 1983; (2) Baker owed him compensatory and punitive damages for malicious prosecution in violation of section 1983; and (3) Baker owed him compensatory and punitive damages for intentional infliction of emotional distress.

Both the Board and Baker filed motions for summary judgment; on July 27, 1993, the district court granted summary judgment in favor of the defendants and against Stjernholm on all claims, and dismissed the complaint. Stjernholm filed a notice of appeal with the court of appeals on September 7, 1993. He then requested, through a motion for relief pursuant to C.R.C.P. 60(b) filed in the district court, permission to submit additional material in opposition to the Board's motion for summary judgment. Because Stjernholm had filed the notice of appeal in the court of appeals, he then had to file a motion for remand from that court to the district court so that the district court could properly consider the motion for relief. The court of appeals remanded the case on November 15, 1993. The district court again granted the Board's motion for summary judgment in May 1994. The district court dismissed the complaint, finding and concluding that the relief granted in the earlier adjudications and subsequent appeals constituted all the relief to which Stjernholm is entitled.

Stjernholm appealed dismissal of the section 1983 complaint to the court of appeals. The court of appeals reversed the district court's ruling in part and affirmed in part. *See Stjernholm v. State Bd. of Chiropractic Exam'rs,* No. 94CA0917, slip op. at 5 (Colo. App. Nov. 9, 1995) (not selected for official publication) (*Stjernholm III*). The court of appeals concluded that neither the Board nor the ALJ had the authority to address the constitutionality of section 24–4–104(4) or section 12–33–119(5) in the administrative proceedings and the section 1983 claims were not barred from being considered in a suit separate from the APA judicial review action. The court of appeals reversed the judgment of dismissal in the section 1983 suit and remanded to the trial court the following constitutional issues: (1) whether the Board violated Stjernholm's federal due process rights by entering a summary suspension without a hearing; (2) whether section 24–4–104(4) violates due process;[8] and (3) whether

case are bound by the result therein under the doctrines of the law of the case and collateral estoppel.

**8.** We have previously held that section 24–4–104(4) is constitutional. *See Colorado State Bd. of Med. Exam'rs v. District Court,* 191 Colo. 158, 160, 551 P.2d 194, 195 (1976); *see also Motor Vehicle Div. v. Castro,* 914 P.2d 517, 518 (Colo. App.1996) ("Our supreme court has previously determined that the summary suspension provisions of § 24–4–104(4) do not violate federal or state due process rights.").

section 24-4-104(4) and section 12-33-119(5) were unconstitutionally applied in the summary suspension of Stjernholm's license. *See Stjernholm III*, No. 94CA0917, slip op. at 6.[9]

The court of appeals affirmed the trial court's summary judgment order dismissing Stjernholm's claims for malicious prosecution, abuse of process, and outrageous conduct against Baker. The court of appeals ruled, however, that summary judgment was granted prematurely with regard to the section 1983 pre-adjudicatory investigation claim: "[T]here exists a genuine issue of fact as to whether Baker participated in the investigatory stage of the proceedings." *Id.* at 9.

We reverse the court of appeals, and conclude that the district court properly dismissed the complaint because all relief potentially available to Stjernholm in the section 1983 action has been granted previously, and no genuine issue of material fact existed that Baker had engaged in investigatory conduct prior to initiation of the adjudicatory proceedings which might constitute a violation of section 1983.

## II.

### Claims Against Board Members Acting in their Official Capacities

#### Summary of Decision

■ The remaining potentially viable claim against the Board members under section 1983 is injunctive relief to prohibit them from reimposing Stjernholm's license suspension contrary to the holding in *Stjernholm II*. We determine that the claim for prospective injunctive relief against the members of the Board in their official capacities is moot.[10] Stjernholm cannot obtain damages against the Board members because they are entitled to absolute immunity for their quasi-judicial actions and only injunctive relief against them is a possibility. Absent new

circumstances and a finding of emergency, as required by *Stjernholm II*, Stjernholm's license cannot be summarily suspended without an adjudicatory hearing. Since the Board's procedural violation is not subject to repetition, in light of the court of appeals decision which binds the parties to that case, and no practical legal effect can be derived from issuance of injunctive relief against the Board members, Stjernholm is not entitled to prospective relief under section 1983.

### A.

#### APA Judicial Review, Section 1983 Actions, and Res Judicata

In order to address whether the court of appeals correctly found *res judicata* inapplicable and remanded this section 1983 case for trial, we must analyze the nature of the claims made, the relief afforded to Stjernholm, and the law enunciated in prior litigation involving him.

■ In *Stjernholm I*, 820 P.2d at 1167, the court of appeals, in a suit brought by Stjernholm as a result of prior disciplinary proceedings brought by the Board against him, correctly held that the Board is not a "person" for section 1983 purposes. After the Board instituted the third round of disciplinary proceedings against him, Stjernholm filed this section 1983 suit in district court, seeking injunctive relief against the individual Board members in their official capacities. This suit was filed in the district court and remained there while *Stjernholm II*, seeking judicial review of state agency action, was proceeding in the court of appeals under the Chiropractic Act, section 12-33-121, 5A C.R.S. (1991), and APA section 24-4-106(11).

The case before us, *Stjernholm III*, concerns the section 1983 action, which paralleled the APA suit for judicial review of agency action, resolved by the court in *Stjernholm II*. In *Stjernholm III*, the court of appeals observed that "the trial court

---

9. With respect to Elsie Stjernholm's claims and the other claims raised in the complaint as to the Board, the court of appeals held that summary judgment in favor of the Board was proper. *See Stjernholm III*, No. 94CA0917, slip op. at 6-7.

10. In holding that this case is moot, we do not determine or suggest that the Board or its members committed misconduct in violation of section 1983. *Cf. County of Adams v. Hibbard*, 918 P.2d 212, 221 (Colo.1996).

found that the relief granted in the earlier adjudications and subsequent appeals comprise the relief sought." *Stjernholm III*, No. 94CA0917, slip op. at 5. By this finding and conclusion, the district court in effect determined that injunctive relief was unavailable and the case was moot. However, the court of appeals determined that Stjernholm's federal constitutional issues pertaining to a section 1983 action had not been litigated between the parties previously and therefore returned the case to the district court for trial. *See id.* at 6.

■ The Board argues that Stjernholm's failure to raise all constitutional issues in *Stjernholm II* precludes litigation of those issues in this section 1983 action by reason of *res judicata.* A court reviewing agency action is competent to review state and federal constitutional issues therein, and parties are ordinarily barred from raising issues which were not presented in a single action for judicial review. But, in *Board of County Commissioners v. Sundheim*, 926 P.2d 545, 548–49 (Colo.1996), we held that a suit under section 1983, a federal cause of action, can exist separately from a C.R.C.P. 106(a)(4) action challenging the quasi-judicial decision of a governmental body. When only qualified immunity applies and the suit is for damages, a section 1983 claim must allege violation of a clearly established constitutional right and material facts of misconduct, under circumstances which reveal that reasonable officials would have understood that their conduct violated plaintiff's right. *See City of Lakewood v. Brace*, 919 P.2d 231, 238 (Colo.1996). In order to effectuate the applicable two-year statute of limitations which differed from the thirty-day filing requirement for judicial review of local governmental action under C.R.C.P. 106(a)(4), we recognized in *Sundheim* that failure to join the section 1983 claims in the suit for judicial review of agency action does not result in preclusion of the federal claims. *Id.* at 549.

Our rationale in *Sundheim* allowing a section 1983 claim to be tried independently also applies here. Judicial review of state agency action under APA section 24–4–106(7) is the counterpart to judicial review of local governmental action under C.R.C.P. 106(a)(4). Here, judicial review of this agency's action

must commence in the court of appeals under a special statutory provision of the Chiropractic Act, while section 1983 lawsuits are tried in the district court. Review of agency action, whether in the district court or the court of appeals, is essentially appellate in nature based on the Board's administrative record. *See* § 24–4–106(6), 10A C.R.S. (1988). Section 1983 suits involve evidentiary presentation to and fact finding by a district court. As to the alleged federal constitutional violations essential to a section 1983 action, the court of appeals did not err in refusing, as a general matter, to employ *res judicata* to preclude section 1983 litigation in the district court.

■ Nonetheless, the Board is collaterally estopped from relitigating the issue of the summary license suspension decided between the parties, *see City & County of Denver v. Block 173*, 814 P.2d 824, 831 (Colo.1991), in *Stjernholm II*, and further proceedings in this section 1983 action to prevent recurrence of Stjernholm's summary license suspension are precluded by a lack of showing that the agency is likely to repeat such conduct. The district court correctly determined that Stjernholm obtained, in *Stjernholm II*, all the relief available to him. When a "live controversy" no longer exists because the conduct complained of is not subject to repetition and an injunction would have no practical legal effect, courts properly terminate section 1983 litigation when it becomes apparent to the court that the relief requested is unavailable and the case moot. *See Taxpayers for the Animas–La Plata Referendum v. Animas–La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1478–79 (10th Cir. 1984). Here, a live controversy no longer exists. Official immunity precludes damages and, under the law of the case of *Stjernholm II*, equitable relief would have no practical legal effect. Stjernholm's license has been restored and the Board cannot summarily suspend it in the absence of new circumstances and a Board finding that an emergency exists.

### B.

*Immunity and Mootness of Injunctive Relief Under Section 1983*

■ As a matter of law, Stjernholm is unable to obtain damages against the mem-

bers of the Board. Absolute immunity protects officials who engage in judicial or quasi-judicial activities from such liability. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the *deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.*

(Emphasis added.) This statute must "be read against a common-law background of official immunity." *Higgs v. District Court,* 713 P.2d 840, 850 (Colo.1985).

Absolute immunity is afforded to those officials whose "special functions or constitutional status requires complete protection from suit." *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982); *see also Higgs,* 713 P.2d at 852. Absolute immunity is typically applied as a complete defense to prosecutors and judges in judicial proceedings in order to preserve their "independent decision-making and to prevent undue deflection of attention from public duties." *Higgs,* 713 P.2d at 850.

■ Administrative officials acting in a quasi-judicial role are entitled to absolute immunity. In *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court concluded that federal administrative officials who initiate or participate in quasi-adjudicatory administrative proceedings, function analogously to prosecutors and judges in judicial proceedings and are absolutely immune from a suit for damages arising therefrom. *Id.* at 512-13, 98 S.Ct. at 2913-14; *Accord, e.g., Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1489 (10th Cir.1991) ("It is also well established that this absolute prosecutorial immunity extends to state attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings.").

We have held that witnesses who testify at grand jury proceedings are entitled to absolute immunity for such testimony because these proceedings are a part of the judicial phase of the criminal process. *See Wagner v. Board of County Comm'rs,* 933 P.2d 1311, 1313, 1314 (Colo.1997). We have further held that members of the Parole Board, a Colorado administrative agency, perform a function that is judicial in nature when they consider, grant, deny, or revoke parole. *See State v. Mason,* 724 P.2d 1289, 1291 (Colo. 1986). Parole Board members, the Parole Board as an entity, and the state are entitled to absolute immunity for their quasi-judicial acts. *See id.* at 1292 ("We recognize that the absolute quasi-judicial immunity of the parole board members ... leaves the plaintiff without remedy even if the parole board's release of [an inmate] was careless and negligent.").

Like the Chiropractic Board, the Parole Board performs both quasi-legislative functions through rulemaking, § 17-2-201(3)(a) to (c), 8A C.R.S. (1986 & 1996 Supp.), and quasi-adjudicatory functions through consideration of applications for parole and hearings on parole revocations, § 17-2-201(4)(a) to (c), 8A C.R.S. (1986 & 1996 Supp.). The Chiropractic Board is comprised of five citizens, four of whom have practiced the chiropractic profession in the state of Colorado for five years prior to their appointment to the Board, and one of whom is appointed from the public at large. § 12-33-103(1), 5A C.R.S. (1991). In its quasi-legislative capacity, the Board has authority to promulgate rules and regulations. § 12-33-107(1)(a), 5A C.R.S. (1991). In its quasi-judicial capacity, the Board has the duty to "[e]xamine, license, and renew licenses of duly qualified chiropractic applicants ...," § 12-33-107(1)(b), 5A C.R.S. (1991); to conduct hearings upon complaints concerning the disciplining of chiropractors, § 12-33-107(1)(d), 5A C.R.S. (1991); to cause the prosecution of and seek injunctions against all persons violating the Act, § 12-33-107(1)(e); and to "[e]mploy investigators, issue subpoenas, compel the attendance of witnesses, compel the production of records, books, papers, and documents, and administer oaths to persons giving testi-

mony at hearings ...," § 12–33–107(1)(f), 5A C.R.S. (1991).

■ We have previously addressed how quasi-judicial actions differ from quasi-legislative actions. Quasi-adjudicatory proceedings involve determinations of the rights, duties, or obligations of specific individuals, *see Colorado Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 217 (Colo.1996), based on "the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question." *Cherry Hills Resort Dev. Co. v. Cherry Hills Village,* 757 P.2d 622, 625 (Colo. 1988).

■ The Board member actions at issue in this section 1983 litigation involved professional discipline and license suspension. In Colorado, such proceedings are quasi-judicial in nature. Discipline under the Chiropractic Act invokes application of the APA. *See* § 12–33–119(5). APA section 24–4–102(2), 10A C.R.S. (1988), provides that "adjudication" means the "proceeding used by an agency for the formulation, amendment, or repeal of an order and includes licensing." *See, e.g., Eagle Peak Farms, Ltd.,* 919 P.2d at 219; *see also Zamarripa v. Q & T Food Stores, Inc.,* 929 P.2d 1332, 1342 (Colo.1997) ("License revocation can occur only as a result of proper quasi-adjudicatory proceeding when a licensee invokes the procedural and substantive protection to which the licensee is entitled under applicable law.").

■ The General Assembly may prohibit the practice of a profession in the absence of a statutorily prescribed license, and there exists a strong public interest in the enforcement of such statutes. *See Kourlis v. District Court,* 930 P.2d 1329, 1333, 1336–37 (Colo.1997). "Doctors of medicine, doctors of osteopathy, chiropodists, dentists, and doctors of chiropractic all practice their professions by grace of the state." *Colorado Chiropractic Ass'n v. State,* 171 Colo. 395, 402, 467 P.2d 795, 799 (1970).

In giving scope to the principle of absolute judicial immunity, the Supreme Court has stated that

a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful.

*Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871). We have applied this policy to absolute prosecutorial immunity. *See Higgs,* 713 P.2d at 850. The rationale for both absolute judicial and prosecutorial immunity is equally pertinent to quasi-judicial functions performed by state boards, members of these state boards, and state attorneys: "The importance of impartial decision making, the possibility of unfounded suits and the need for freedom from fear of litigation...." *Mason,* 724 P.2d at 1291.

■ As public officials engaging in quasi-judicial actions, the state Board, Board members and attorneys enjoy absolute immunity from suit for damages, state or federal. Underscoring and reinforcing this immunity, the Chiropractic Act provides that "[t]he members of the board shall not be personally liable for damages for any official act of the board." § 12–33–104, 5A C.R.S. (1991). Of course, a state actor cannot invoke a state immunity provision to avoid liability otherwise existing under section 1983. *See Brace,* 919 P.2d at 238. But this provision of the Chiropractic Act mirrors federal law which *does* preclude a suit under section 1983 for damages arising from judicial or quasi-judicial activities.

Nevertheless, official immunity from damages does not equate to immunity from injunctive relief under section 1983. "[N]either qualified *nor absolute* immunity precludes prospective *injunctive relief.*" *Lemmons v. Law Firm of Morris & Morris,* 39 F.3d 264, 267 (10th Cir.1994); *see also White v. Colorado,* 82 F.3d 364, 366 (10th Cir.1996). In "rare circumstances," a person may seek injunctive relief against continuing or future government misconduct which violates section 1983 even though damages cannot be awarded because of of-

**970**

ficial immunity. *See Lemmons*, 39 F.3d at 267.

Stjernholm seeks injunctive relief against the Board members under section 1983. Since such relief is not barred as a matter of the law of official immunity, we must examine whether the district court correctly determined that such relief could not be awarded in this case. The complaint alleges that "[t]his action is brought to enjoin and stop improper and unconstitutional state regulatory agency action," and that court intervention is required to accomplish this. We agree with the district court that Stjernholm has been awarded previously all the relief to which he is entitled and this case is moot.

Statutory procedural requirements accompany license and discipline proceedings in recognition of the fact that a professional license is a valuable and indispensable prerequisite to conducting a learned livelihood affecting the public interest. The court of appeals final decision effectively prevents a recurrence of the procedural violation alleged in this section 1983 action: summary suspension of Stjernholm's chiropractic license without a hearing, in the absence of a justifying emergency. Prospective injunctive relief would have no practical effect here. Nearly two years prior to this court of appeals decision, in July of 1991, the Board itself had lifted the order of summary suspension. No facts have been pleaded by Stjernholm in this section 1983 action to demonstrate that the Board is considering repeating, or is likely to repeat, that conduct which the court of appeals held to be illegal.

■ A case is moot when the relief sought, if granted, would have no practical legal effect. *See Brown v. Colorado Dep't of Corrections*, 915 P.2d 1312, 1313 (Colo.1996); *see also Van Schaack Holdings, Ltd. v. L.C. Fulenwider*, 798 P.2d 424, 426 (Colo.1990). "[W]hen issues presented in litigation become moot because of subsequent events, an appellate court will decline to render an opinion on the merits of an appeal." *Van*

*Schaack*, 798 P.2d at 427. When the conduct sought to be redressed by either declaratory or injunctive relief is peculiar to a particular event that has already occurred, the finality of the event in a manner incapable of repetition moots the controversy. *See Freedom From Religion Found., Inc. v. Romer*, 921 P.2d 84, 88 (Colo.App.1996). In *Freedom From Religion*, a section 1983 case, the court of appeals reasoned that a controversy is moot when neither declaratory nor injunctive relief with regard to past events will have any practical legal effect.[11] *Id.; see also Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1519 (10th Cir. 1992) (plaintiffs' claims seeking declaratory and injunctive relief under section 1983 were properly dismissed on summary judgment as moot).

■ A section 1983 injunctive claim is moot when prospective relief is unnecessary to remedy an existing controversy or prevent its recurrence. In *White v. Colorado*, 82 F.3d 364, 366 (10th Cir.1996), plaintiff asserted a claim under section 1983 alleging that defendants were deliberately indifferent to his serious medical needs because they refused to provide him surgery on a leg injury sustained prior to his incarceration. *Id.* The court concluded that his claims for injunctive relief against the prison officials were moot, in view of his release from that institution on parole. *Id.* In *Aiona v. Judiciary of Hawaii*, 17 F.3d 1244, 1248 (9th Cir.1994), the Ninth Circuit dealt with the constitutionality of Hawaii's statutory administrative driver's license revocation process; plaintiffs' section 1983 claims for injunctive relief were held to be moot because their licenses had been restored. *Id.; see also Shimabuku v. Britton*, 503 F.2d 38, 44 (10th Cir.1974) (In discussing the need for regulations which the agency had proceeded to issue, the court stated that "it thus appears that appellants have already received everything for which they asked and which could in any event have been granted."). In *F.E.R. v. Valdez*, 58 F.3d 1530 (10th Cir. 1995), plaintiffs sought an injunction ordering

**11.** To the extent that declaratory relief might have been viable in the context of this section 1983 suit, Stjernholm has obtained a declaration that his rights had been violated. *See Stjernholm II*, 865 P.2d at 856 ("Thus, the Board did not

have authority summarily to suspend Stjernholm's license, and accordingly, we hold that the board's summary suspension order was improper.").

the return of their patient records to their psychiatrist. *Id.* at 1533. But their records had been returned at the end of the investigation and there existed no present controversy justifying injunctive relief, and the objective sought by the proposed injunction had been met already. *See id.*

■ Two exceptions exist to the mootness doctrine: the court may resolve an otherwise moot case if the matter is one that is capable of repetition yet evading review, *see People v. Black,* 915 P.2d 1257, 1259 n. 1 (Colo.1996) (citing *Humphrey v. Southwestern Dev. Co.,* 734 P.2d 637, 639 (Colo.1987)), and the court may hear a moot case involving issues of great public importance or recurring constitutional violation. *See Black,* 915 P.2d at 1259 n. 1.

■ Neither exception is applicable here. Stjernholm's license was restored and the final judgment of the court of appeals in *Stjernholm II* binds the parties. This case does not involve a matter of great public importance or an allegedly recurring constitutional violation. Rather, this case involves an alleged procedural violation by a state agency, which has been adjudicated between the parties and remedied by the final decision of the court of appeals.

■ Sufficient allegations of injury justifying equitable relief are a standing requirement to maintenance of an action for such relief under section 1983. In *Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), plaintiff Lyons was stopped by police officers for a traffic code violation. *Id.* at 97, 103 S.Ct. at 1662–63. Though Lyons offered no resistance or threat, the officers seized him and applied a chokehold, rendering Lyons unconscious and causing damage to his larynx. *Id.* at 97–98, 103 S.Ct. at 1662–63.

Lyons filed a complaint seeking, *inter alia,* injunctive and declaratory relief, *see id.* at 97, 103 S.Ct. at 1662, alleging that he and others similarly situated "are threatened with irreparable injury in the form of bodily injury and loss of life, and that Lyons 'justifiably fears that any contact he has with Los Angeles Police officers may result in his being choked and strangled to death without provocation, justification or other legal excuse.'" *Id.* at 98, 103 S.Ct. at 1663. The Supreme Court stated that "[t]he equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *Id.* at 111, 103 S.Ct. at 1670 (quoting *O'Shea v. Littleton,* 414 U.S. 488, 502, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974)). The Court thus held that the federal courts lacked jurisdiction to entertain Lyons' claim for injunctive relief, *see id.,* 461 U.S. at 101, 103 S.Ct. at 1664, and stated that absent a showing that the plaintiff will be wronged again in a *similar way,* he or she is not entitled to injunctive relief under section 1983. *See Lyons,* 461 U.S. at 111, 103 S.Ct. at 1670. Past exposure to illegal conduct, if unaccompanied by any continuing, present adverse effects, does not present a case or controversy regarding injunctive relief. *See Valdez,* 58 F.3d at 1534; *see also Arizonans for Official English v. Arizona,* —— U.S. ——, ——, 117 S.Ct. 1055, 1069, 137 L.Ed.2d 170 (1997) ("A still vital claim for prospective injunctive relief" must be present at all stages of review.).

Although states may choose to use different standards than the federal courts for issuance of injunctions under section 1983, *see Lyons,* 461 U.S. at 113, 103 S.Ct. at 1671, Colorado has adopted the equivalent of the *Lyons* standard. We have directed that "[c]ourts should not grant the equitable remedy of injunction against other branches of government in the absence of convincing proof of *threatened* and *impending* wrongful action." *City of Pueblo v. Flanders,* 122 Colo. 571, 573, 225 P.2d 832, 833 (1950) (emphasis added). We have determined that standing requirements for injunctive relief against enforcement of a particular regulatory scheme must satisfy the imminent injury standard. In *Board of County Commissioners v. Bowen/Edwards Associates, Inc.,* 830 P.2d 1045, 1054 (Colo.1992), we concluded that imminent injury to a legally protected interest must have been caused or threatened to justify injunctive relief against the enforcing agency. *Id.* ("A plaintiff seeking injunctive relief satisfies the threshold requirement of standing by showing that the action complained of has caused or has

threatened to cause imminent injury to an interest protected by law.").

Actions of state agencies have a presumption of validity and regularity. *See North Colorado Med. Center, Inc. v. Committee of Anticompetitive Conduct,* 914 P.2d 902, 906 (Colo.1996); *see also Public Utils. Comm'n v. District Court,* 163 Colo. 462, 468, 431 P.2d 773, 776 (1967). This presumption of regularity extends to compliance with final decisions of courts of law and operates to render injunctive relief, enforceable by the contempt powers of the court, normally unnecessary to prevent recurrence of the agency action which was disapproved by the court. If, however, this agency attempts to suspend Stjernholm's license contrary to the final decision in *Stjernholm II,* an equitable remedy would be available.

The trial court was correct in its order following remand from *Stjernholm II* that "[t]he relief granted in the earlier adjudications and subsequent appeals comprise the relief sought" against the Board. Prospective injunctive relief is not appropriate because the conduct of the agency does not possess recurring potentiality or effect under the state of this record. *Cf. Valdez,* 58 F.3d at 1533–34.[12] Since no claim for relief is viable in this section 1983 action, Stjernholm's claim for attorney fees pursuant to 42 U.S.C. § 1988 (1994) is untenable; fees can be awarded only to a prevailing party in a section 1983 action. *See* 42 U.S.C. § 1988 (1994).

### III.

*State Attorney Advocatory Immunity in Quasi–Judicial Proceedings; and Pre–Proceeding Qualified Immunity*

The court of appeals determined that a genuine issue of material fact remains as to

Baker's investigative activities prior to the commencement of the Board's quasi-adjudicatory proceeding and her advocatory activities therein: "at this stage of the proceeding, there exists a genuine issue of fact as to whether Baker participated in the investigatory stage of the proceedings. Thus, summary judgment was granted prematurely on this issue." *Stjernholm III,* No. 94CA0917, slip op. at 9. We disagree and uphold the trial court's determination that Stjernholm failed to allege sufficient facts that Baker engaged in any investigatory misconduct, outside of her absolute immunity status, in violation of section 1983.

State attorneys acting in quasi-adjudicatory proceedings enjoy absolute immunity in the same manner as prosecutors when " 'intimately associated with the judicial phase of the criminal process.' " *Higgs,* 713 P.2d at 851 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976)). We follow the federal courts in using a functional analysis to determine whether a prosecutorial or advocatory activities are absolutely immune. *See Higgs,* 713 P.2d at 852–53. In making this determination, we distinguish between those functions that are adjudicatory in nature, and those that are investigative or administrative in nature. *See id.* at 853. Adjudicatory functions are typically closely related to the judicial process itself, and are absolutely immune; investigative and administrative functions enjoy only qualified immunity. *See id.* Three factors are utilized in determining whether absolute or qualified immunity applies: (1) whether the challenged conduct occurred prior to or subsequent to the filing of formal criminal charges against the indi-

---

12. With respect to Stjernholm's prayer for relief in the form of a permanent injunction against the Board from "giving out to any person information that the Plaintiff was summarily suspended," or "maintaining in any file open to public inspection or review any reference to Plaintiff being summarily suspended," we conclude that the action of the Board in summarily suspending Stjernholm has been corrected by the court of appeals decision in *Stjernholm II,* which opinion is a public record. As here, the plaintiffs in *Aiona* argued that the claims were not moot

because a declaratory judgment would expunge the damage to their reputations. *Aiona,* 17 F.3d at 1248. This argument was meritless because plaintiffs had already received a declaration in state court that their revocations were improper. *See id.* The public record here stands as a curative counterpart to the record of the Board's incorrect action in summarily suspending this practitioner before the adjudicatory hearing. But we also note that the court of appeals in *Stjernholm II* upheld the Board's finding that Stjernholm had engaged in unprofessional conduct in violation of the Chiropractic Act.

vidual seeking redress; (2) whether safeguards existed that could deter or mitigate prosecutorial abuse thus lessening the need for a civil action to redress the violation of constitutional rights; and (3) whether the challenged conduct more closely resembles police conduct rather than prosecutorial conduct. *See id.*

▮ Baker is entitled to absolute immunity for actions she took after the Board referred the quasi-adjudicatory case to her on December 6, 1990, including the preparation of the Order of Summary Suspension, Notice of Informal Prehearing Conference, Notice of Hearing, Notice of Charges, and subsequent proceedings regarding the temporary license suspension or permanent license revocation. In its May 18, 1994 Order granting the defendants' motions for summary judgment, the trial court found that plaintiff failed "to come forward with sufficient specific facts to prove that Baker engaged in such [investigative] activity as to warrant the Court setting aside Baker's absolute prosecutorial immunity in this case." We agree. The term "investigation," for which only qualified immunity exists, connotes witness interviews and other evidence-gathering activity preceding the filing of formal charges against an individual. Once formal charges have been filed, the role of the state's attorney changes from investigative to prosecutorial or advocatory, invoking absolute immunity. *See Higgs,* 713 P.2d at 854.[13]

The Board, on December 6, 1990, commenced adjudicatory proceedings and referred the case to Baker to prepare the summary suspension order and take other advocatory action therein. Prior thereto, Mary Gorham and others, not Assistant Attorney General Baker, acted as the Board's investigator for the case. In the course of that investigation, Gorham contacted Baker on November 17, 1989, requesting any names

Baker might have pertinent to Gorham's investigation. In response, Baker sent a handwritten memorandum to Gorham listing persons and entities, including two doctors, an association of claims adjusters, and the Wyoming Board of Chiropractic Examiners. In her affidavit in this case, Baker swore that *at no time* prior to December 6, 1990, did she

> personally investigate any of the allegations against Dr. Stjernholm or interview any witnesses. All conversations with patients, insurance companies and doctors referenced in [her] deposition occurred after the December 6, 1990 meeting and were necessary for [her] preparation of the Order of Summary Suspension, Notice to Set an Informal Prehearing Conference, Notice of Hearing and Notice of Charges signed by the Board on February 8, 1991.

Stjernholm made no factual showing controverting this affidavit. Stjernholm contends that there are numerous examples in Baker's deposition that she was "intimately involved in this investigatory process of the case against Dr. Stjernholm." But the record does not support the existence of any facts tending to show that Baker personally interviewed any of the persons or entities listed or committed misconduct, which might provide the basis for section 1983 liability. Stjernholm relies on Baker's deposition; however, upon review of that testimony, we are satisfied that Baker's investigation occurred *after* the Board referred the case to her on December 6, 1990, and that such activities were part of her quasi-judicial role. Stjernholm, *pro se,* deposed Baker. During the deposition, Stjernholm repeatedly asked questions of Baker regarding interviews in connection with the Order of Summary Suspension, which was issued on February 8, 1991. None of Baker's answers implicates investigation by her prior to the Board's meeting on December 6, 1990.[14]

13. "Investigate" is defined as: "To follow up step by step by patient inquiry or observation. To trace or track; to search into; to examine and inquire into with care and accuracy ... the taking of evidence; a legal inquiry." *Black's Law Dictionary* 825 (6th ed. 1990).

14. Stjernholm appears to use the terms "summary suspension" and "order of summary sus-

pension" interchangeably throughout the deposition as referring to the same date, February 8, 1991. At one point early in the deposition, Baker asked

> A What do you mean by the summary suspension? Do you mean the order of summary suspension?
> Q Yes.

■ We agree with the district court that Stjernholm made no colorable showing of "Baker's allegedly improper involvement in the investigation." Supplying pertinent names to an investigator is not sufficient evidence of misconduct; rather, such conduct is expected of public officials who are contacted by law enforcement personnel. "It is well settled that the burden of establishing the unreasonableness of an exercise of state police power is upon the party attacking that exercise." 4-D Bros., Inc. v. Heckers, 33 Colo.App. 421, 424, 522 P.2d 749, 751 (1974).

■ Even if Baker had engaged in the investigation which preceded commencement of the adjudicatory proceedings, she would be entitled to qualified immunity from suit. To withstand a motion for summary judgment in the qualified immunity context, violation of a clearly established constitutional right[15] and material facts of misconduct must be pleaded. See Brace, 919 P.2d at 243; see also United States v. Lanier, —— U.S. ——, ——, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997) ("In the civil sphere, we have explained that qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'") (citations omitted) (alteration in original). In County of Adams v. Hibbard, 918 P.2d 212 (Colo.1996), where a county attorney ordered the destruction of plaintiff's residence and personal property which had not been the subject of the ALJ's order, we stated that

> [a] public official who knowingly and capriciously acts outside the authority of gov-

ernment to deprive a citizen of property rightfully that of the citizen should not be able to escape liability by donning the cloak of government action as an aid to his or her defense.

Id. at 221. Deliberately abusive, fraudulent, oppressive, or harsh conduct in violation of a federal constitutional right is what section 1983 is intended to remedy. See Hibbard, 918 P.2d at 218, 220. In Crouse v. City of Colorado Springs, 766 P.2d 655, 660 (Colo. 1988), we noted that not all intentional misconduct by state officials is subject to relief under section 1983. "[E]xcessive force or other outrageous abuse of government authority directed against citizens is precisely the type of misconduct which the remedies created by Congress in § 1983 were designed to deter." Id.

The court of appeals erroneously concluded that there existed a genuine issue of fact with respect to Baker's participation in investigatory activities prior to initiation of the quasi-judicial proceeding, which might constitute a violation of section 1983 sufficient to withstand summary judgment.[16]

## IV.

Accordingly, we reverse the judgment of the court of appeals which remanded this case for trial under section 1983. We remand to that court with directions that the district court's judgment dismissing the complaint be reinstated.

15. As we observed in footnote 8, supra, there is no clearly established right guaranteeing a hearing prior to summary license suspension; nor is there a clearly established right that bars investigation leading to such a summary license suspension. Under the APA, an adjudicatory hearing is required, see § 24–4–104(6), 10A C.R.S. (1988), but it may be held after the summary suspension when the proceedings for license suspension or revocation are promptly instituted and determined, see § 24–4–104(4).

16. Stjernholm also argues that the adverse inference rule, see Asplin v. Mueller, 687 P.2d 1329,

1332 (Colo.App.1984), raises a presumption against Baker because she refused to answer certain questions regarding the Board's and Baker's motivation with regard to Stjernholm's record keeping violation during the deposition. Her refusal, however, was based on the attorney-client privilege. These questions are not germane to our disposition of this case, and Baker did provide answers to all of Stjernholm's questions regarding when any interviews occurred. This argument lacks merit.